913 A.2d 137 (2007)
389 N.J. Super. 377
William GRUBBS and Deborah Grubbs, Plaintiffs-Respondents,
v.
Lenore SLOTHOWER, Defendant. and
Rahway Zoning Board of Adjustment, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 18, 2006.
Decided January 8, 2007.
*138 Solomon and Weinberg, attorneys for appellant Rahway Zoning Board of Adjustment (Cory Mitchell Gray, New York, NY, of counsel and on the brief).
John DeNoia, Woodbridge, attorney for respondents William Grubbs and Deborah Grubbs.
Before Judges STERN, COLLESTER and MESSANO.
The opinion of the court was delivered by
MESSANO, J.S.C. (temporarily assigned).
This matter presents an issue of first impression in this State. Specifically, we must decide whether a municipal zoning board of adjustment should apply the same standards of review for density variances, N.J.S.A. 40:55D-70d(5), as it does for use variances, N.J.S.A. 40:55d-70d(1); Medici v. BPR Co., 107 N.J. 1, 526 A.2d 109 (1987). Because we conclude the same review standards should not be employed, we reverse and remand this matter to the Rahway Board of Adjustment (the Board) for further proceedings consistent with this opinion.

I.
Plaintiffs, William and Deborah Grubbs, own property located at 1709 Lawrence Street, in Rahway (the property). The property measures 90.5 feet by 152.07 feet and consists of 14,117 square feet. Pursuant to the Rahway Zoning Ordinance (Ordinance), it is located in an R-2 zone that permits single-family dwellings. Minimum lot sizes of fifty by one hundred feet and minimum area sizes of 5000 square feet are required in the R-2 zone.
Plaintiffs submitted an application for development, see N.J.S.A. 40:55D-3, that sought permission to subdivide their single, existing conforming lot into three new non-conforming lots and to construct two new one-family homes on two of the new lots, maintaining the existing one-family home on the third. The application also sought variances from the zone's front yard setback, side yard setback, and parking requirements.
Lenore Slothower,[1] Rahway's Administrative Officer, deemed the application complete and determined plaintiffs required a density variance pursuant to N.J.S.A. 40:55D-70d(5). She referred the matter to the Board. A public hearing on the application was held on April 12, 2005 and by a vote of three to three with one abstention, the Board denied the application.
*139 In a memorializing resolution approved May 23, the Board found the following facts and reached the following conclusions:
FINDINGS OF FACT:
1. The Zoning Board of Adjustment has jurisdiction to act upon the Application, with a majority vote required for approval of all matters with the exception of any "use" variance under the provisions of N.J.S.A. 40:55D-70d for which five affirmative votes are required.
* * * *
CONCLUSIONS AND DETERMINATIONS
1. In order to obtain a use variance, an Applicant is required to prove the existence of "special reasons" for the variance, and those "special reasons" must be reasons which promote the general purposes of zoning as express in N.J.S.A. 40:55D-2. See Medici v. BPR Co., 107 N.J. 1 [526 A.2d 109] (1987). For applications that do not inherently serve the public good, such as this application, an Applicant must demonstrate by credible evidence that special reasons exist because the proposed site is particularly suited for the proposed use. . . . Alternatively, an applicant may establish the existence of "special reasons" by demonstrating proof of undue hardship, that is, that the property at issue cannot reasonably be developed with a conforming use. . . . In addition, an applicant for a use variance must satisfy the so-called negative criteria, that is an Applicant must establish that a grant of the variance would not impair the intent and purpose of the Zone Plan and Zoning Ordinances of the City. In a residential project such as the Applicant's proposed subdivision, the Applicant need not meet the enhanced quality of proof demanded of commercial uses by Medici v. BPR Co., 107 N.J. 1 [526 A.2d 109] (1987).
2. The Applicant requires a use variance because the proposed development exceeds the density permitted in the zone. In the past, the Board has been asked to extend the more relaxed standards of review imposed in floor area ratio cases (see, e.g., Coventry Square Inc. v. Westwood Zoning Bd. of Adjustment, 138 N.J. 285 [650 A.2d 340] (1994) and Randolph Town Center v. Twp. Of Randolph, 324 N.J.Super. 412 [735 A.2d 1166] (App.Div.1999)) to "density" cases, and it has declined to do so. No reported case has extended the Randolph standard to a density case, and it is not the Board's prerogative to extend the law, only to apply it. Thus, the appropriate standard of review is the non-commercial Medici standard articulated above.
(emphasis added.)
The balance of the Board's resolution adequately stated its conclusions with respect to the evidence presented at the hearing and its application of the above standards to that evidence.
Plaintiffs appealed to the Law Division. In a written opinion, the trial judge vacated the Board's denial of the application, concluded that the Board lacked jurisdiction over the matter, and remanded the application to the Rahway Planning Board. The judge reasoned that the Ordinance required minor subdivision approval when the application sought to create two lots; the creation of any greater number of lots required major subdivision approval under the Ordinance. He noted that pursuant to N.J.S.A. 40:55D-70d(5), the Board had jurisdiction over any density variance except for "lots resulting from a minor subdivision." He acknowledged that this *140 exception did not apply because the application sought major subdivision approval.
Nonetheless, he continued,
[T]here is no logic for a municipality that wishes to control density to require that a use, or (d), variance is in order because a subdivision for three lots is involved, but not required to subdivide a lot into two lots, even though there would still be in either case an intensification of use or an increase in density of the pre-divided lot in question. Once a subdivision, whether major or minor, is involved in the development of the lot, the density of that lot becomes meaningless and the size rather than the density of the proposed lots becomes paramount. What is then regulated . . . is the size of each of the proposed lots as related to . . . numerous bulk requirements. . . . [T]he intensity of the use of the subject lot, without the proposed subdivision, for two proposed one-family dwellings and one existing one-family dwelling, where presumably more people would reside and thereby intensify the use of the land, is not at issue. . . . "[D]ensity restrictions affect only the number of individual residential units that may be constructed on a tract of land." Commercial Realty v. First Atlantic, 122 N.J. 546 [585 A.2d 928] (1991). Simply stated, a density or "number" of units per gross area issue is not relevant herein for either the whole lot or the three proposed lots.
The judge concluded that since the application implicated the review of bulk variances under N.J.S.A. 40:55D-70c ancillary to the subdivision, the matter was appropriately under the Planning Board's jurisdiction. The Rahway Board of Adjustment now appeals that determination.

II.
We begin our review of the trial court's decision by recognizing the standards that guide our consideration. "When reviewing the decision of a trial court that has reviewed municipal action, we are bound by the same standards as was the trial court." Fallone Prop. L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J.Super. 552, 561, 849 A.2d 1117 (App.Div. 2004). Because of its "peculiar knowledge of local conditions," the Board's factual findings are entitled to substantial deference and are presumed to be valid. Burbridge v. Mine Hill Twp., 117 N.J. 376, 385, 568 A.2d 527 (1990) (quoting Medici, supra 107 N.J. at 23, 526 A.2d 109); see also Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965). The Board's conclusions of law are subject to de novo review. Wyzykowski v. Rizas, 132 N.J. 509, 518, 626 A.2d 406 (1993); Adams v. DelMonte, 309 N.J.Super. 572, 583, 707 A.2d 1061 (App.Div.1998). However, "although we construe the governing ordinance de novo, we recognize the board's knowledge of local circumstances and accord deference to its interpretation." Fallone Prop., supra, 369 N.J.Super. at 562, 849 A.2d 1117.
Pursuant to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to129, each municipality may define what constitutes a minor or major subdivision. "The statutory grant from the State of the municipal power to zone and to control the subdivision of property is now provided by the MLUL." Pizzo Mantin Group v. Twp. of Randolph, 137 N.J. 216, 223, 645 A.2d 89 (1994). "`Minor subdivision' means a subdivision of land for the creation of a number of lots specifically permitted by ordinance as a minor subdivision. . . ." N.J.S.A. 40:55D-5. "Major" subdivision "means any subdivision not classified as a minor subdivision." Ibid.
Initially, we note that the MLUL leaves to the municipality's discretion the decision *141 of whether to allow for minor subdivisions at all. See N.J.S.A. 40:55D-40a; and see Cox, New Jersey Zoning and Land Use Administration § 16-2.1 at 382 (2006). The MLUL permits each municipality to draw the line of demarcation that serves to define the two types of subdivisions.
Thereafter, the MLUL establishes different procedures for approval of either a minor or major subdivision. It permits a municipality to adopt an ordinance that waives the requirements of notice and public hearing for minor subdivision applications. See N.J.S.A. 40:55D-12a and 40:55D-47. Conversely, the MLUL dictates a more complicated review by the appropriate board for major subdivision approval, requiring notice and a public hearing, as well as a two-stage approval process. N.J.S.A. 40:55D-38 (mandatory requirements for subdivision ordinances); see also N.J.S.A. 40:55D-39 to40 (discretionary contents for subdivision ordinances). Indeed, the entire legislative scheme permits a municipality to expedite approval of applications for minor subdivisions. "[M]inor subdivision approval creates a short cut. Thus, minor subdivisions can be dealt with quickly." Cox, supra, § 16-2.1 at 382.
In concluding that the Ordinance's definition of minor and major subdivision applications was not "logical," the trial judge did not appropriately consider this legislative scheme. Although plaintiffs' application exceeded the limit for a minor subdivision by only one lot, Rahway's exercise of discretion in determining the definitional line between major and minor subdivisions was appropriate under the express provisions of the MLUL.
However, it was the trial judge's decision that the application did not require a density variance at all that led to his vacation of the Board's denial of plaintiffs' request. "Density" is defined by the MLUL as "the permitted number of dwelling units per gross area of land to be developed." N.J.S.A. 40:55D-4. The board of adjustment has sole jurisdiction over applications that seek a variance from a zone's density restrictions. N.J.S.A. 40:55D-70; see also Commercial Realty v. First Atlantic, 122 N.J. 546, 562, 585 A.2d 928 (1991).
Pursuant to N.J.S.A. 40:55D-70d, a board of adjustment may,
[G]rant a variance to allow departure from regulations . . . to permit:
(1) a use or principal structure in a district restricted against such use or principal structure;
. . . .
(5) an increase in the permitted density as defined in [N.J.S.A. 40:55D-4], except as applied to the required lot area for a lot or lots for detached one or two dwelling unit buildings, which . . . lot or lots resulting from a minor subdivision.
Since plaintiffs' application created lots that were not the result of a minor subdivision, this exception to the Board's exclusive jurisdiction over density variances did not apply. Nonetheless, the trial judge reasoned,
It cannot be overemphasized that there is no request by the plaintiffs to have three dwelling units on its [sic] 14,117 square foot property, but to have one dwelling unit on each of the three proposed lots.
However, from our review of the record, we conclude that the application indeed sought the placement of three dwelling units on the 14,117 square feet of plaintiffs' property.
The MLUL defines an "application for development" as "the application form and all accompanying documents required by ordinance for approval of a subdivision plat, site plan . . . [or] zoning variance." N.J.S.A. 40:55D-3. Plaintiffs' application *142 sought subdivision and variance approvals that affected all of the property because, at the least, all three proposed lots were non-conforming and the location of the planned structures required other dimensional variances.
The Ordinance did not adopt a specific definition of density per unit of land to be developed. However, by implication, Rahway determined that each single-family unit required 5000 square feet of area. It is not impermissible for a municipality to define its density restrictions in this indirect fashion. See, Cox, supra, § 7-7.2 at 216. The interrelationship between permitted minimum lot size and density requirements may be illustrated as follows:
[W]here the minimum lot area in a single family residential district is fixed at one-half acre, the density cumulative is thus two dwelling units per acre. An application for a major subdivision which would result in construction of more than two dwelling units per acre would require an application to the zoning board of adjustment [for a density variance]. If the lots in a proposed subdivision all meet the minimum lot sizes required by the ordinance, the "density" is consistent with the minimum lot size requirements and therefore no density variance is required.
[Id. at 215.]
See also Green Meadows v. Plan. Bd. of Montville, 329 N.J.Super. 12, 24, 746 A.2d 1009 (App.Div.2000) (where the applicable zoning ordinance deals with density by prescribing lot sizes, a density variance is not required if all of the proposed lots exceed the applicable minimum lot size).
Applying these standards to the facts before us, we conclude that plaintiffs' application required a density variance pursuant to N.J.S.A. 40:55D-70d(5). The application sought development of a tract of land that was approximately 14,117 square feet, and, pursuant to the Ordinance, the permitted density for such an area was approximately 2.8 dwelling units, not three as proposed. A density variance was necessary because under the Ordinance, the "gross area of land to be developed" did not permit "the number of dwelling units" plaintiffs sought to construct on that land. Under the MLUL, the Board had sole jurisdiction over the application. This requires reversal of the trial judge's order referring the application to the Planning Board.

III.
We nevertheless are compelled to remand the matter to the Board because we believe it applied the wrong standards of review in denying plaintiffs' application. In its resolution of denial, the Board cited the holdings in Coventry Square, Inc. v. Westwood Bd. of Adjustment, 138 N.J. 285, 650 A.2d 340 (1994) and Randolph Town Ctr. Assocs., L.P. v. Twp. of Randolph, 324 N.J.Super. 412, 735 A.2d 1166 (App.Div.1999), characterizing both as providing for "more relaxed standards of review" of variance requests in floor area ratio (FAR) cases. N.J.S.A. 40:55D-70d(4). However, the Board declined to extend these "relaxed standards" to the review of plaintiffs' density variance request.
In Coventry Square, supra, 138 N.J. at 287, 650 A.2d 340, the Court considered the appropriate standard of review of a request for a conditional use variance pursuant to N.J.S.A. 40:55D-70d(3). Because a conditional use by definition is not a prohibited use in the zone, the Court concluded "the stringent special reasons standards for a commercial-use variance . . . summarized in Medici" did not apply. Ibid.
*143 In Medici, the Court established the appropriate standard of review for a commercial use variance request made pursuant to N.J.S.A. 40:55D-70d(1). Medici, supra, 107 N.J. at 3-4, 526 A.2d 109. In granting such an application, the zoning board of adjustment must find
that the use promotes the general welfare because the proposed site is particularly suitable for the proposed use . . . that the grant of a use variance is not inconsistent with the intent and purpose of the master plan and zoning ordinance . . . [and that] the variance "will not substantially impair the intent and purpose of the zone plan and zoning ordinance."
[Id. at 4, 526 A.2d 109 (quoting N.J.S.A. 40:55D-70d).]
The Court further required that these criteria must be proven by "an enhanced quality of proof." Ibid.
In Coventry Square, however, the Court determined that the "onerous" burden of proof required to support a use variance was not required to support a variance from conditions imposed upon a permitted conditional use. Coventry Square, supra, 138 N.J. at 298, 650 A.2d 340. The Court explained its reasoning as follows:
In the case of prohibited uses, the high standard of proof required to establish special reasons for a use variance is necessary to vindicate the municipality's determination that the use ordinarily should not be allowed in the zoning district. In the case of conditional uses, the underlying municipal decision is quite different. The municipality has determined that the use is allowable in the zoning district but has imposed conditions that must be satisfied . . . [A] conditional-use applicant's inability to comply with some of the ordinance's conditions need not materially affect the appropriateness of the site for the conditional use. Accordingly, the standard of proof of special reasons to support a variance from one or more conditions imposed on a conditional use should be relevant to the nature of the deviation from the ordinance. . . . The use-variance proofs attempt to justify the board of adjustment's grant of permission for a use that the municipality has prohibited. Proofs to support a conditional-use variance need only justify the municipality's continued permission for a use notwithstanding a deviation from one or more conditions of the ordinance.
[Id. at 297-98, 650 A.2d 340.]
In a more general sense, the standards of review for any particular variance application must reflect "criteria that are appropriate for the specific types of variances" sought. Id. at 298, 650 A.2d 340.
In Randolph Town Ctr., supra, 324 N.J.Super. at 416, 735 A.2d 1166, we extended Coventry Square's reasoning to consideration of the appropriate standards of review for a FAR variance application. N.J.S.A. 40:55D-70d(4). We noted,
Because a(d)4 FAR variance also deals with uses that are permitted in the zone and thus is different from variances for excluded uses, we hold pursuant to Coventry Square that an applicant for a FAR (d)(4) variance need not show that the site is particularly suited for more intensive development. To impose such a stringent burden would mean that a FAR variance applicant would have perhaps as difficult a burden to meet as an applicant for a prohibited use variance. To require such a burden would be inconsistent with the principle that variances for permitted uses need not meet the "stringent special reasons standards for a commercial-use variance."
[Id. at 416-17, 735 A.2d 1166 (quoting Coventry Square, supra, 138 N.J. at 287, 650 A.2d 340).]
*144 We concluded that a successful applicant for a FAR variance would still have to demonstrate: "special reasons" for the grant of the variance, the so-called "positive criteria" of N.J.S.A. 40:55D-70d, and, that the variance would not cause "substantial detriment to the public good and [would] not substantially impair the intent and the purpose of the zone plan and the zoning ordinance," the so-called "negative criteria" of the statute. Id. at 415-16, 735 A.2d 1166. However, the successful applicant need only show that the "site will accommodate the problems associated with a proposed use with larger floor area than permitted by the ordinance." Id. at 417, 735 A.2d 1166.
Similarly, in Grasso v. Borough of Spring Lake, 375 N.J.Super. 41, 866 A.2d 988 (App.Div.2004), we extended Coventry Square's less stringent review standards to consideration of applications for height variances. N.J.S.A. 40:55D-70d(6). Once again, we reiterated that the standard of review of the applicant's "special reasons" for a variance depends on the type of variance at issue. Id. at 49, 866 A.2d 988. "[S]pecial reasons necessary to establish a height variance must be tailored to the purpose for imposing height restrictions in the zoning ordinance." Id. at 52, 866 A.2d 988.
We now hold that Coventry Square relaxed standard of review should be applied to variance applications seeking deviations from the density requirements in a particular zone. N.J.S.A. 40:55D-70d(5). Density variances for permitted uses in the zone should not trigger the application of Medici's more stringent standard for the same reasons expressed in Coventry Square. A density variance seeks a departure from certain regulations applicable to a use the municipality has chosen to permit, not prohibit, in the zone.
Such requests need not demonstrate that the property is "particularly suitable to more intensive development" in order to prove "special reasons" under the MLUL. Randolph Town Ctr., supra, 324 N.J.Super. at 416, 735 A.2d 1166. Rather, in considering such applications, zoning boards of adjustment should focus their attention on whether the applicant's proofs demonstrate "that the site will accommodate the problems associated with a proposed use with [a greater density] than permitted by the ordinance." Id. at 417, 735 A.2d 1166.
Since special reasons supporting a particular variance request "must be tailored" to the purpose served by the restriction in the ordinance, Grasso, supra, 375 N.J.Super. at 52, 866 A.2d 988, we examine the purpose of restricting density in a particular zone. The MLUL explicitly recognizes the regulation of the density of development as a general purpose of zoning that contributes to "the well-being of persons, neighborhoods, communities and regions and preservation of the environment." N.J.S.A. 40:55D-2(e). Density restrictions, in the residential context, and FAR restrictions, in the commercial setting, both serve to limit the intensity of the use of the land to be developed. Commercial Realty, supra, 122 N.J. at 561, 585 A.2d 928; see also Cox, supra, § 7-7.2 at 215.
Special reasons are those that promote the purposes of zoning as set forth in N.J.S.A. 40:55D-2. Burbridge, supra, 117 N.J. at 386-87, 568 A.2d 527; Medici, supra, 107 N.J. at 10, 18, 526 A.2d 109. Though not expressly stated in the MLUL, the preservation of the character of a neighborhood or property values in that neighborhood have also been recognized as legitimate purposes of zoning. Home Builders League of S. Jersey, Inc. v. Twp. of Berlin, 81 N.J. 127, 145, 405 A.2d 381 (1979). A successful applicant for a *145 density variance therefore must show that despite the proposed increase in density above the zone's restrictions, and, thus, the increased intensity in the use of the site, the project nonetheless served one or more of the purposes of zoning and was consistent with the overall goals of the MLUL.
For example, it might be shown that the project promoted a more desirable visual environment through development of otherwise underdeveloped or vacant property, N.J.S.A. 40:55D-2(i); see also Burbridge, supra, 117 N.J. at 387-88, 568 A.2d 527 (aesthetic improvement may support special reasons for variance in expansion of an existing non-conforming use), or, a successful applicant might demonstrate that the project's construction with the requested density variance better promotes the character of the neighborhood or better preserves property values in the adjacent community.
Likewise, in addressing the so-called negative criteria, the applicant would need to demonstrate that the increase in density would not have a more detrimental affect on the neighborhood than construction of the project in a manner consistent with the zone's restrictions. For example, the applicant might demonstrate that the increased proposed density was only minimally greater than the permitted density in the zone or in adjacent areas. Randolph Town Ctr., supra, 324 N.J.Super. at 418, 735 A.2d 1166. The applicant might show that it was unlikely that a minimal increase in density would create a "substantial detriment" to nearby properties. Yahnel v. Bd. of Adjustment of Jamesburg, 79 N.J.Super. 509, 519, 192 A.2d 177 (App.Div.), certif. denied, 41 N.J. 116, 195 A.2d 15 (1963).
Our discussion of how an applicant might sufficiently demonstrate the positive and negative criteria in a density variance application is purely illustrative. We do not mean to imply that in any particular situation, satisfactory proof of such matters should compel the zoning board of adjustment's approval of the requested variance. We respect the proper use of the authorized discretion accorded to any board to consider the proofs in any particular matter that comes before it. Kramer, supra, 45 N.J. at 296, 212 A.2d 153.
Applying the above standards to the facts here, we conclude that this matter must be remanded to the Board. Neither party supplied us with the record of the testimony and evidence presented before the Board. Therefore, we cannot conclude whether plaintiffs produced sufficient proof to justify the grant of a density variance under the standards we have now enunciated, and, in any event, the decision should initially be made by the Board. In light of the contents of the Board's resolution, we must conclude that the Board applied the more restrictive Medici standards to its consideration of plaintiffs' request. Upon remand, the Board should allow plaintiffs to supplement the record to address any relevant factors. Likewise, the Board is permitted to consider any other evidence from its professional staff or objectors in adopting its findings of fact and conclusions of law as appropriate.
Reversed and remanded to the Board. We do not retain jurisdiction.
NOTES
[1] Slothower was named as a defendant in plaintiff's prerogative writ complaint filed in the Law Division. She has not participated in this appeal.