**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0034-22

FERRIS FARMS OF EAST
BRUNSWICK, LLC,

      Plaintiff-Respondent,

v.

TOWNSHIP OF EAST
BRUNSWICK, TOWNSHIP
COUNCIL OF EAST
BRUNSWICK, TOWNSHIP
OF EAST BRUNSWICK
PLANNING BOARD,
and TOWNSHIP OF EAST
BRUNSWICK ZONING
BOARD OF ADJUSTMENT,

      Defendants-Appellants.

_____

Argued October 10, 2023 – Decided December 26, 2023

Before Judges Gilson, Berdote Byrne, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7257-20.

Jay A. Weiner argued the cause for appellants Township of East Brunswick Zoning Board of Adjustment (Weiner & Weiner, PC, attorneys; Jay A. Weiner, of counsel and on the brief).

Craig M. Gianetti argued the cause for respondent (Day Pitney LLP, attorneys; Craig M. Gianetti, of counsel and on the brief; Amanda M. Kronemeyer, on the brief).

PER CURIAM

In this prerogative writs matter, defendant Township of East Brunswick Zoning Board of Adjustment's (Board) appeals from the July 27, 2022 order, which incorporated a May 31, 2022 order, reversing and vacating the Board's denial of plaintiff Ferris Farm Inc. of East Brunswick, LLC's use and density variance application. Having considered the arguments, the record, and the applicable legal principles, we affirm in part, reverse in part, and remand for a new determination by the Board.

## I.

We summarize the relevant facts from the record. Plaintiff owns five acres in the Township of East Brunswick (Township) at 690 Cranbury Road, designated as Block 321, Lot 6.03. The property is within the Township's R-1 Single Family Rural Residential Zone (R-1 Zone) that permits single-family detached homes on one-acre lots. Known as "Ferris Farms Garden Center," it is

a "highly intense, non-conforming commercial use" consisting of buildings, greenhouses, and parking spaces within the R-1 Zone.

Plaintiff submitted an application to the Board to develop fifty units of townhouses consisting of forty market rate units and ten affordable units at a density rate of ten units per acre. The application sought bifurcated use and density variances and, if granted, followed with a preliminary and final site plan approval for the development.

The Board held public hearings on January 17, April 4, June 20, October 3, November 21, December 19, 2019, and on July 2, 2020 concerning plaintiff's original, first amended, and second amended applications. During the hearings, plaintiff's proposed plan underwent two iterations. The first amended application reduced the proposal to thirty-six townhouse units. The second amended application further reduced the site plan to thirty townhouse units and a density of six units per acre. The proposed development consists of five buildings, two buildings with six units, one building with eight units, one building with seven units, and one building with three units. All are three-bedroom units.

The second amended plan depicted each townhouse driveway as twenty feet wide with a paver brick line down the center of driveways between neighbors. A stop sign, stop bar, curb ramps, and a crosswalk had been added

A-0034-22

at Cranbury Road. No parking signs were added throughout the development and the cul-de-sac area was striped as a fire lane because of comments from the Township's fire official. The size of the stormwater management basin had been increased and exceeded the New Jersey Department of Environmental Protection standards. The revised plan also kept existing trees along the south border to be contained within a proposed conservation easement. Trash can locations had been depicted along the street for weekly pickup also based on the Board's comment.

In support of its application that the site could accommodate the proposed townhouse development, plaintiff presented expert witnesses including an architect, civil engineer, planner, traffic consultant, environment consultant, professional planner, and a real estate sales and marketing consultant. The Board presented no independent testimony from its professionals to refute, or raise issue with, plaintiff's experts. During the hearings, the public posed questions concerning the stormwater management and buffering, which were addressed by the civil engineer.

At the hearings, the Board focused on snow removal, electric vehicle charging stations, the homeowners' association, the sidewalk on Cranbury Road, and the turning direction of residents leaving their driveways. The Board also focused on inadequate visitor parking for holiday and "potential overflow."

A-0034-22

Although the Board acknowledged the Residential Site Improvement Standards were "probably adequate," they also noted the police department found the proposed 135 physical spaces to be inadequate. Additionally, the Board declined to permit parallel parking on the proposed thirty-foot roadway for guest parking.

The Board was advised plaintiff met with the lone objector, a neighboring homeowner, and agreed to a "24-foot-wide access and utility easement" dedicated to the homeowner, with a "single water" and "single sewer lateral" for one unit. Plaintiff also agreed to preserve the wood line along the shared property line in a conservation easement and to provide additional landscaping to screen the parking spaces and detention basin. At the December hearing, the attorney for the lone objector advised the Board that the homeowner was satisfied with the second amended application.

On July 2, 2020, the Board heard recommendations by its professional staff. The Board then denied the application in a 6-1 vote without deliberation, which rendered the bifurcated site plan moot. Each Board member placed the reasons for denial on the record.

On September 3, 2020, the Board issued a twelve-page resolution memorializing its July 2 decision. The Board found "the proposed project [was] not appropriate and not suitable at the proposed site for the reasons provided on

5

the record;" and based on the testimony presented the "[a]pplica[tion] [did] not satisf[y] the positive and negative requirements for the [u]se [v]ariance pursuant to N.J.S.A. 40:55D-70(d)(1) and N.J.S.A. 40:55-70(d)(5), and that it <u>cannot</u> be granted without substantial impairing the intent and purpose of the Township's Master Plan and Zoning Ordinances."

Plaintiff filed a complaint in lieu of prerogative writs, challenging the Board's action as arbitrary, capricious, and unreasonable. It sought reversal of the Board's denial and requested approval of its second amended application. The Board filed an answer and separate defenses.

Following a one-day trial, the trial court reserved decision. On May 31, 2022, the trial court entered an "order for judgment and other related relief" and issued a comprehensive forty-three-page written decision. After conducting a "scrutinizing review and analysis of the transcripts, the [a]pplication, and the proofs adduced in the record," the court found the "Board's denial of [p]laintiff's [a]pplication was without foundation, arbitrary, capricious[,] and unreasonable." The court reversed and vacated the Board's denial of plaintiff's second amended application. The court also directed the Board to adopt a resolution approving plaintiff's application, granting the use and density variances, and granting plaintiff leave to submit a follow-up development application for preliminary and final site plan approval for the proposed development.

A-0034-22

Thereafter on July 27, 2022, the trial court entered final judgment incorporating the May 31 order and the parties' consent order dismissing the remaining claims.

II.

On appeal, defendant raises the following points:

POINT I

THE TRIAL COURT ERRED IN ITS DETERMINATION THAT DEFEN[]DANT TOWNSHIP OF EAST BRUNSWICK ZONING BOARD OF ADJUSTMENT WAS ARBITRARY, CAPRICIOUS, AND UNREASONABLE IN ITS DECISION DENYING PLAINTIFF'S APPLICATION FOR THE USE AND DENSITY VARIANCES SOUGHT.

POINT II

THE TRIAL COURT ERRED IN ITS DETERMINATION THAT PLAIN[]TIFF SATISFIED THE POSITIVE CRITERIA THRESHOLD NEEDED FOR THE USE AND DENSITY VARIANCES SOUGHT.

POINT III

THE TRIAL COURT ERRED IN ITS DETERMINATION THAT PLAINTIFF SATISFIED THE NEGATIVE CRITERIA THRESHOLD NEEDED FOR THE USE AND DENSITY VARIANCES SOUGHT.

THE TRIAL COURT ERRED IN ITS DETERMINATION THAT DEFENDANT TOWNSHIP OF EAST BRUNSWICK ZONING BOARD OF ADJUSTMENT'S RESOLUTION MEMORIALIZING ITS DECISION WAS INADEQUATE AND/OR INSUFFI[]CIENT TO SUPPORT ITS DETERMINATION, THEREBY RENDERING THE DENIAL OF THE APPLICATION AR[B]ITRARY, CAPRICIOUS, AND UNREASONABLE.

"When reviewing a trial court's decision regarding the validity of a local board's determination, 'we are bound by the same standards as . . . the trial court.'" Jacoby v. Zoning Bd. of Adj. of Bor. of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015) (quoting Fallone Props., L.L.C. v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004)). "We have long recognized that zoning boards, 'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.'" Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (alteration in original) (quoting Kramer v. Bd. of Adj., Sea Girt, 45 N.J. 268, 296 (1965)). However, we review de novo a board's conclusions of law. Wyzykowski v. Rizas, 132 N.J. 509, 518 (1993). Thus, we exercise plenary review of a board's interpretation of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -65. See Russo v. Bd. of Trs., Police and Firemen's Retirement Sys., 206 N.J.

14, 27 (2011) (stating a court is "'in no way bound by an agency's interpretation of a statute'") (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973)); Motley v. Borough of Seaside Park Zoning Bd. of Adj., 430 N.J. Super. 132, 146 (App. Div.) (reviewing de novo board of adjustment's interpretation of MLUL), certif. denied, 215 N.J. 485 (2013).

We give deference to the actions and factual findings of local boards. Jacoby, 442 N.J. Super. at 462. "A board's decision 'is presumptively valid, and is reversible only if arbitrary, capricious, and unreasonable.'" Smart SMR of N.Y., Inc. v. Bor. of Fair Lawn Bd. of Adj., 152 N.J. 309, 327 (1998) (quoting Sica v. Bd. of Adj. of Wall, 127 N.J. 152, 166-67 (1992)); see also Kane Props., LLC v. City of Hoboken, 214 N.J. 199, 229 (2013). "We do not review the wisdom of [a planning board's] decision, rather . . . we merely 'determine whether the board could reasonably have reached its decision.'" Pullen v. Twp. of S. Plainfield Plan. Bd., 297 N.J. Super. 1, 6-7 (App. Div. 1996) (quoting Davis Enters, v. Karpf, 105 N.J. 476, 485 (1987)). "Accordingly, we will not disturb a board's decision unless we find a clear abuse of discretion." Cell S. of N.J., Inc. v. Zoning Bd. of Adj. of W. Windsor Twp., 172 N.J. 75, 82 (2002).

We first address whether the trial court erred in finding plaintiff presented sufficient proofs at the hearing to satisfy the criteria to be granted a use variance. The MLUL governs land use and development planning generally and

A-0034-22

specifically authorizes zoning boards to grant variances under circumstances defined in the statute. The statute requires a finding of "special reasons" or positive criteria, and "a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance" or negative criteria. N.J.S.A. 40:55D-70(d).

To satisfy the "special reasons" or positive criteria as a predicate to granting a use variance under (d)(1), an applicant must prove: (1) the use "inherently serves the public good"; (2) "the use promotes the general welfare because the proposed site is particularly suitable for the proposed use"; or (3) the applicant would experience "undue hardship," because "the property cannot reasonably be developed with a conforming use." Medici v. BPR Co., 107 N.J. 1, 4 (1987); see also Stop & Shop Supermarket Co. v. Bd. of Adj. of Springfield, 162 N.J. 418, 430-31 (2000).

However, when an applicant seeks a d(5) variance from density restrictions with a d(1) use variance, the applicant need not demonstrate that the property is "particularly suitable to more intense development" to satisfy the "special reasons" requirement under the MLUL. Coventry Square, Inc. v. Westwood Zoning Bd. of Adj., 138 N.J. 285, 287 (1994); Price, 214 N.J. at 296-97; Grubbs v. Slothower, 389 N.J. Super. 377, 388 (App. Div. 2007). Instead,

10

the applicant need only show that the particular site will "accommodate the problems associated with the proposed use with [a greater density] than permitted by the ordinance." Id. at 398.

Following an exhaustive review of the record, the court examined the findings of fact made by the Board, disagreed, and found the Board was "incapable of refuting the fact that the proposed residential use is permitted in the R-1 Zone (albeit for single-family, not the townhome type) and that, if the use variance were granted, it would eliminate the pre-existing, nonconforming use to which the [p]roperty was being utilized" as a retail garden center. The court further determined the elimination of the garden center, "that fact alone, could qualify as a "special reason" that satisfied the "positive criteria" under the MLUL to qualify it for a (d)(1) use variance.

In finding plaintiff demonstrated "special reasons" for the d(1) and d(5) variances sought, the court analyzed whether plaintiff satisfied the positive criteria. The court reasoned the record was "undisputed that residential use is permitted in the R-1 Zone, but that the unit type and density were not." Upon determining the d(1) and d(5) were "inextricably intertwined," the court concluded plaintiff satisfied the positive criteria by "demonstrating with overwhelming evidence" and the exhaustive and "uncontroverted" testimony

A-0034-22

from the planning expert that the site was "particularly suited for a townhouse development" and "furthered the purposes of zoning."

As to the negative criteria, the court found plaintiff "proved that a grant of the use and density it sought could be approved by the Board and would not be a "substantial detriment to the public good." The court highlighted the "'hodgepodge' of residential and commercial uses along the Cranbury Road corridor – many of which were approved by use variance by the Board." The court also noted "the surrounding area is residential just as [the proposed development] would be, and it was further demonstrated that the unit type and density (as reduced) would be consistent with most of the surrounding properties." Based on the record, the court concluded plaintiff satisfied the first prong of the negative criteria.

The court next considered the second prong and concluded plaintiff proved the grant of the use and density variance could be approved by the Board and would not "substantially impair the intent and the purpose of the zone plan and zoning ordinance." It also determined that the record was devoid of substantial credible evidence to support the Board's findings and conclusions concerning a substantial impairment to the public good. The court concluded the Board's "denial was rendered in spite of preponderating, uncontroverted and substantial, credible evidence adduced by the [p]laintiff in the record that

12

supported – and proved – its satisfaction of both the positive and negative criteria." Thus, the court found that the record "warranted the Board's grant of the use variance and attendant density variance," and approval of the bifurcated application.

We are persuaded that the proposed development for thirty-unit townhouses does not run afoul of a "determination that the use ordinarily should not be allowed in the zoning district." Coventry Square, 138 N.J. at 287. We are satisfied the trial court's findings that plaintiff satisfied the positive and negative criteria are amply supported by the record. We also conclude the record supported the trial court's findings that residential use is permitted within the R-1 Zone and the proposed development is consistent with "goal 28" of the 2015 Master Plan Reexamination to establish "appropriate development standards for lots which adjoin high density residential and commercial areas." As a consequence, we find no error in the court's conclusions that the Board neither followed the statutory guidelines nor properly exercised its discretion. Columbro v. Lebanon Twp. Zoning Bd. of Adj., 424 N.J. Super. 501, 508 (App. Div. 2012) (quoting Med. Ctr. at Princeton v. Twp of Princeton Zoning Bd. of Adj., 343 N.J. Super. 177, 199 (2001)).

We also reject the Board's contention that the trial court erred in finding the Board's denial was arbitrary, unreasonable, and capricious. A board's

13

resolution "must contain sufficient findings, based on the proofs submitted, to satisfy a reviewing court that the board has analyzed the applicant's variance request in accordance with the statute and in light of the municipality's master plan and zoning ordinances." N.Y. SMSA, 370 N.J. Super. at 333. We have rejected as deficient memorializing resolutions that "summarize[d], in a very cursory fashion, the testimony presented by [the applicant's] witnesses, and reiterate[d] selected comments by Board members and the public." Ibid. "[S]tatements of individual Planning Board members, 'represent informal verbalizations of the speaker's transitory thoughts, they cannot be equated to deliberative findings of fact . . . .'" Rocky Hill Citizens for Responsible Growth v. Plan. Bd. of Rocky Hill, 406 N.J. Super. 384, 413 (App. Div. 2009) (quoting N.Y. SMSA v. Bd. of Adj. of Twp. of Weehawken, 370 N.J. Super. 319, 334 (App. Div. 2004)).

Although a zoning board may reject an applicant's expert testimony, it must do so on an identified basis, such as reliance on contrary expert testimony, and should not rely on "bare allegations or unsubstantiated beliefs." N.Y. SMSA, 370 N.J. Super. at 338 (citing Cell S. of N.J., Inc., 172 N.J. at 87). A resolution relying on comments and concerns from board members or residents will not satisfy a board's obligation to ground its decision on evidence presented during a hearing. Cell S. of N.J., Inc., 172 N.J. at 88 (holding a board's decision

14

must be "root[ed] . . . in substantiated proofs rather than unsupported allegations."). A board's reliance upon non-expert testimony from its members or concerns voiced by residents rather than qualified expert testimony to prove the adverse effects associated with a requested variance renders a board's decision arbitrary, capricious, and unreasonable. Ibid.

Here, the trial court relied on N.Y. SMSA and found the Board's resolution contained a "mere recital of testimony" and "conclusory statements couched in statutory language" contrary to the requirements of applicable law. The court explained the Board's findings in the resolution were in "clear conflict" with the "uncontroverted testimony" provided by plaintiff's expert witnesses. Moreover, the "conclusions reached and recited in the [r]esolution lacked substantial, credible evidence in the record to support" the Board's action.

Having reviewed the record, we conclude the Board's resolution was deficient because it simply identified the applicant, described the proposed development, provided a cursory summary of the expert witness testimony, and reiterated select comments by board members as a basis for the denial of the application. In sum, the Board's resolution failed to meet the requirements of N.J.S.A. 40:55D-10(g). See Medici, 107 N.J. at 23.

We are satisfied the trial court expressed his findings of fact and conclusions of law in a cogent, written opinion. As discussed above, we are

15

cognizant of plaintiff's burden of proof, which was met by overwhelming and uncontroverted evidence. Medical Realty Assoc. v. Bd. of Adj., 228 N.J. Super. 226, 233 (App. Div. 1988); see also N.Y. SMSA, 370 N.J. Super. at 331. We find no error in the trial court's conclusion that the Board's action in denying plaintiff's application was arbitrary, capricious, and unreasonable.

We also agree with the court's conclusion that the Board's resolution lacks the fact-finding required by Medici. However, we conclude the trial court mistakenly exercised its discretion in directing the Board to adopt a resolution approving plaintiff's application, granting the use and density variances, and granting plaintiff leave to submit a follow-up development application for preliminary and final site plan approval for the proposed development. See Jock v. Zoning Bd. of Adj. of Wall, 184 N.J. 562, 597 (2005) (explaining that generally a court should not make a decision for a zoning board). Instead, we hold that the Board should be given an opportunity to reconsider the application on the existing record.

Accordingly, we reverse that portion of the trial court's order and direct that the matter be remanded to the Board. The Board is to reconsider the application on the existing record and take a new vote on the application. If the Board votes to deny the application, its resolution must expressly explain how it has overcome the errors identified by the trial court. If it cannot explain how

16

it can overcome those errors, the Board should vote to approve the application. Either way, the Board shall issue a new resolution, setting forth specific findings of fact to support its decision in accordance with N.J.S.A. 40:55D-10(g). See Smith v. Fair Haven Zoning Bd. of Adj., 335 N.J. Super. 111, 123 (App. Div. 2000).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION