**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2859-23

DOMINICK DIMINNI,

    Plaintiff-Appellant,

v.

SEASIDE HEIGHTS PLANNING
BOARD and ONE OCEAN
TERRACE, LLC,

    Defendants-Respondents.

_____

Argued February 25, 2025 – Decided May 23, 2025

Before Judges Firko and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1062-23.

Edward F. Liston, Jr. (Edward F. Liston, Jr., LLC) argued the cause for appellant.

Barry A. Stieber argued the cause for respondent Seaside Heights Planning Board (Citta, Holzapfel & Zabarsky, attorneys; Barry A. Stieber and Steven A. Zabarsky, on the brief).

Matthew J. Heagen argued the cause for respondent One Ocean Terrace, LLC (Grossman Heavey & Halpin, PC, attorneys; Matthew J. Heagan, of counsel and on the brief).

PER CURIAM

In this prerogative writs action, plaintiff Dominick DiMinni, an objector at the hearing before the Borough of Seaside Heights Planning Board (Planning Board), appeals from an April 11, 2024 order affirming the Planning Board's grant of preliminary and final major site plan approval with (c)(2), (d)(5), and (d)(6) variances to defendant One Ocean Terrace, LLC (One Ocean Terrace) to construct new residential buildings on a parking lot near plaintiff's residence. The judge concluded the Planning Board had jurisdiction to hear the matter and did not abuse its discretion by granting the (c)(2), (d)(5), and (d)(6) variances, and therefore, dismissed plaintiff's complaint with prejudice.

We agree and affirm essentially for the reasons set forth in Judge Francis R. Hodgson, Jr.'s comprehensive decision. The notice of the Planning Board hearing was compliant with the requirements under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -171, giving the Planning Board jurisdiction, and there was ample evidence in the record supporting the Planning Board's approval of the (c) and (d) variances.

I.

The material facts are undisputed, and we discern them from the trial record. In December 2022, One Ocean Terrace filed an application for preliminary and final site plan approval for construction of seventeen townhomes in three five-story multi-family buildings in Seaside Heights. The Property is located at 9 and 11 Ocean Terrace and 24 Porter Avenue, also known as Block 1, Lots 7, 10, and 19.02, in the Borough of Seaside Heights (Property). The Property is located in a mixed residential and retail business zone. The Property currently has a commercial parking lot on it. However, historically, the Property's uses have varied; for instance, previously, the Property had McKelvey's Bar and later Frankie's and Johnny's.

Approval of the application for the current development required four variances: two variances for setbacks, referred to as flexible or bulk (c) variances; and two variances for density and height, referred to as (d) variances. The setback variances are for front yard setbacks of five feet on Ocean Terrace and Porter Avenue, where ten feet is required; and for a driveway width of twenty-four feet where sixteen feet is the maximum allowable. The (d) variances include one for density, (d)(5), requesting that each unit have approximately 1,092 square feet where 1,200 square feet is required; and for

height of approximately 48.82 feet, (d)(6), where 41 feet is the maximum allowable height.

One Ocean Terrace published a notice of the public hearing and variance requests in the Asbury Park Press newspaper and provided a copy to property owners situated within 200 feet of the Property pursuant to N.J.S.A. 40:55D-12. The notice read as follows:

> PLEASE TAKE NOTICE, that on February 27, 2023, at 6:00 p.m. in the Council Chambers in the Municipal Building of the Borough of Seaside Heights Municipal Offices, 901 Boulevard & Sherman Avenue, Seaside Heights, New Jersey, the Seaside Heights Planning Board will hold a hearing on the application of the undersigned, at which time and place all interested persons will be given an opportunity to be heard.
>
> The application is for Block 1, Lots 7, 10 and 19.02 as shown on the Borough of Seaside Heights Tax Map and is located at 9 and 11 Ocean Terrace and 24 Porter Avenue, Seaside Heights, Ocean County, New Jersey.
>
> The applicant is seeking Board approval of this major preliminary and final site plan with variances. The site plan includes three (3) structures which will

A-2859-23

house a total of seventeen (17) residential townhomes. The applicant seeks the following variances:

- Front yard setback on Porter Avenue
- Front yard setback on Ocean Terrace
- Height
- Lot area/unit

The applicant seeks site plan and variance approval along with any and all other variances or design waivers deemed necessary for the purpose of developing this property according to the submitted plans.

Copies of the application and plans are available for review at the Borough of Seaside Heights Municipal Offices, 901 Boulevard & Sherman Avenue, Seaside Heights, New Jersey, during normal business hours.

The municipal offices were previously located at the address listed in the notice but had since been moved to 100 Grant Avenue in Seaside Heights. A notice on the door of the municipal building at the old address stated the municipal offices' new address was 100 Grant Avenue.

On February 27, 2023, consistent with the notice, the Planning Board held a public hearing on One Ocean Terrace's application. At the outset of the hearing, plaintiff challenged the Planning Board's jurisdiction, claiming that One Ocean Terrace's notice was deficient. After hearing arguments from both parties, the Planning Board deemed the notice compliant and determined it had jurisdiction to hear the application on its merits.

5

At the Planning Board meeting, One Ocean Terrace presented the testimony of Matthew Wilder, a professional engineer and planner, who summarized the project and described the variances being requested. Wilder testified to the character of the Property, focusing on the visibility and details of the buildings. He explained that the three buildings would be five stories in height with a ground level parking area and seventeen town homes. Access to the Property would be provided via a new driveway onto Ocean Terrace. The application created the net loss of one public metered parking space. Wilder stated that, in his view, "the benefits of the deviation substantially outweigh the detriment[s]," and he saw "no detriment associated with the[] setback variances."

Wilder explained the need for a density variance, which "is subject to a weighing analysis." As Wilder further explained, "the applicant must demonstrate that the site can accommodate the problems typically associated with a use with a greater density," such as traffic and parking. According to Wilder, those issues were mitigated because One Ocean Terrace was providing the necessary parking, and the public was only losing one street parking space. Finally, Wilder explained the need for a height variance, concluding that

6

property can accommodate the proposed deviation and there was no detriment to the surrounding properties.

Wilder stated that the same goals of the MLUL aimed at promoting the general welfare were advanced by all the variances sought. He concluded that the variances sought could "be granted without detriment to the public good and without substantially impairing the intent or purpose of the zone plan or zoning ordinance."

Jason Hanrahan, the architect who prepared the project's plans, testified to the design characteristics of the Property. Hanrahan described the Property as "a gateway to Seaside Heights," located in a "prominent location," and the design emphasized these characteristics.

Following the presentation of One Ocean Terrace's case, plaintiff's counsel cross-examined the witnesses but presented none of his own. Plaintiff argued that One Ocean Terrace had not proven the need for the variances and failed to explain how the benefits discussed could not be achieved by conforming to the code. As plaintiff's counsel explained:

> The next question I have is, why does it have to be [seventeen] units? Why can't it be reduced in height and setback and a few less units, a little bit better project? I suspect it's economic, but I don't think one or two units is going to make a difference in the profit. Frankly, it's not a bad looking project, but it's just, it's

A-2859-23

not great for the neighborhood and the guy who's getting gored by that is my client.

At the close of the hearing, the Planning Board unanimously voted to grant One Ocean Terrace's application. On March 27, 2023, the Planning Board issued a resolution memorializing the approval. On May 9, 2023, plaintiff filed a complaint in lieu of prerogative writs, challenging the Planning Board's jurisdiction and asserting that One Ocean Terrace failed to meet its burden of proof with respect to the variances.

On September 22, 2023, the judge denied plaintiff's motion for summary judgment. On April 5, 2024, Judge Hodgson conducted a trial on plaintiff's complaint, reserving his decision. On April 11, 2024, the judge entered an order, with an accompanying written opinion, dismissing the complaint with prejudice. First, the judge determined that the notice was compliant with the MLUL, establishing the Planning Board's jurisdiction. Second, the judge held that there was sufficient credible evidence in the record supporting the Planning Board's determination to grant the variances and found that the Planning Board's determination that One Ocean Terrace "proposed a better zoning alternative and satisfied the 'positive' and 'negative criteria'" was not an arbitrary and capricious decision.

Plaintiff appeals, reiterating the arguments it made to the judge, including his challenge to the sufficiency of the notice and the evidence presented in support of the variances.

II.

Our review of a Planning Board's decision is limited. Smart SMR v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998). Deference to a planning board is owed "because of [its] peculiar knowledge of local conditions. . . ." Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965). Therefore, we give "wide latitude in the exercise of its delegated discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (quoting Kramer, 45 N.J. at 296). Because of its expertise and particular knowledge of the local landscape, a planning board's decision "enjoy[s] a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Ibid. (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002)).

However, while "recogniz[ing] the board's knowledge of local circumstances and accord[ing] deference to its interpretation[,]" Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004), we review the Planning Board's legal conclusions de novo. Wyzykowski v.

9

Rizas, 132 N.J. 509, 518 (1993). "In evaluating a challenge to the grant or denial of a variance, the burden is on the challenging party to show that the zoning board's decision was 'arbitrary, capricious, or unreasonable.'" Price, 214 N.J. at 284 (quoting Kramer, 45 N.J. at 296).

A.  Notice.

Plaintiff contends the judge erred in finding the notice of the public hearing sufficient and therefore, that the Planning Board had jurisdiction. Plaintiff argues that the notice was defective because (1) the address of the location of the project's plans was incorrect; and (2) the notice was impermissibly vague.  In rejecting these claims, the judge concluded that "common sense dictates" that a member of the public could have easily found the location of the plans, and the notice provided sufficient information "to inform the layperson of the nature of . . . the proposed development and whether it would affect them."  We discern no error in the judge's conclusions.

"[P]roper public notice in accordance with the requirements of the MLUL is a jurisdictional prerequisite for a zoning board's exercise of its authority." Pond Run Watershed Ass'n v. Twp. of Hamilton Zoning Bd. of Adjustment, 397 N.J. Super. 335, 350 (App. Div. 2008) (citing Perlmart of Lacey, Inc. v. Lacey Twp. Plan. Bd., 295 N.J. Super. 234, 237 (App. Div. 1996)).  The "[f]ailure to

provide proper notice deprives a municipal [P]lanning [B]oard of jurisdiction . . . ." Shakoor Supermarkets, Inc. v. Old Bridge Twp. Plan. Bd., 420 N.J. Super. 193, 201 (App. Div. 2011) (citing Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 79 (1998)).

The MLUL requires that the public notice for a variance application include: (1) "the date, time and place of the hearing," (2) "the nature of the matters to be considered," (3) "an identification of the property proposed for development by street address," and (4) "the location and times at which" any supporting documents for application are available. N.J.S.A. 40:55D-11. Notice of the hearing "shall be given to the owners of all real property as shown on the current tax duplicates, located . . . within 200 feet in all directions of the property which is the subject of such hearing." N.J.S.A. 40:55D-12(b). "Public notice shall be given by publication in the official newspaper of the municipality, if there be one, or in a newspaper of general circulation in the municipality." N.J.S.A. 40:55D-12(a).

The notice need not be "exhaustive." Pond Run, 397 N.J. Super. at 355. Rather, the MLUL requires only "a common sense description of the nature of the application, such that the ordinary layperson could understand its potential impact upon him or her . . . ." Perlmart, 295 N.J. Super. at 239 (holding that

notice was deficient where notice only alluded to three commercial lots being created when the proposed use was a shopping center with a K-Mart department store). The notice should apprise the public and neighboring property owners of the "nature and character of the proposed development . . . so that they may make an informed determination as to whether they should participate in the hearing or, at the least, look more closely at the plans and other documents on file." Id. at 237-38. Moreover, a notice should place emphasis on "accurately identifying the type of use or activity proposed by the applicant" and not on the "technical zoning term" for the use proposed. Id. at 239 (quoting In re Appeal of Booz, 533 A.2d 1096, 1098-99 (Pa. Commw. Ct. 1987)).

Here, the notice stated that "[c]opies of the application and plans" were available for review at the Borough's municipal offices, located at 901 Boulevard & Sherman Avenue, Seaside Heights. However, the municipal offices had moved to a new location at 100 Grant Avenue—approximately one block from the location noted in the notice. Moreover, as the trial judge noted, the new address was prominently posted on the door of the old location and "direct[ed] people to the new municipal offices located at 100 Grant Avenue."

Furthermore, 901 Boulevard & Sherman Avenue houses the Borough's police department, and a member of the public seeking the location of the

application could have easily inquired within as to the new location of the municipal buildings. There was no evidence demonstrating that a member of the public, including plaintiff's own counsel, had difficulty locating the plans or was unable to ascertain the correct location of the plans.

The judge also rejected plaintiff's claim that the notice was insufficiently vague because it failed to provide a detailed description of the specific size of the deviations sought in the variances and because it omitted the term "density" from its description. The judge found the description of the deviations "at issue passed muster" and the notice provided sufficient detail about the project and what was being proposed.

The judge concluded that the notice identified with specificity the variances sought and the nature of proposed project. The judge stated the notice "clearly informs the public that there are going to be three structures housing [seventeen] townhouses and that the application will require variances relief from front yard setback requirements on Ocean and Porter Avenues; height limitations; and the lot per unit limitation." The record amply supports the judge's determination that this notice adequately "enable[s] members of the public to make 'an informed determination' about whether to attend and

participate in the applicant's land use hearing." See Perlmart, 295 N.J. Super. at 237.

B.  Sufficiency of Evidence Supporting Planning Board's Decision.

"Provisions in a zoning ordinance that control the size and shape of a lot and the size and location of buildings or other structures on a parcel of property are known as bulk or dimensional requirements." Ten Stary Dom P'ship v. Mauro, 216 N.J. 16, 28 (2013). "A [planning] board may grant a variance where the purposes of the [MLUL] 'would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment,' N.J.S.A. 40:55D-70[(c)](2), provided the applicant can satisfy the negative criteria." Morris Cnty. Fair Hous. Council v. Boonton Twp., 230 N.J. Super. 345, 355 (App. Div. 1989).

Under N.J.S.A. 40:55D-70, "[s]ubsection (c)(1) authorizes the grant of bulk variances justified only upon the finding of hardship arising out of exceptional" characteristics of the property; whereas subsection (c)(2) "allows the grant of a variance where the purposes of the [MLUL] would be advanced by a deviation from the zoning ordinance requirements and the benefits would outweigh any detriment to the public good." Cox et al., New Jersey Zoning &

14

Land Use Administration, § 29-1, at 425 (2025). Unlike subsection (c)(1), hardship is not a required finding under subsection (c)(2). Id. at 437.

Under subsection (d) of N.J.S.A. 40:55D-70, the grant of a variance "[i]n particular cases for special reasons," is permitted "to allow departure from regulations . . . to permit:

> (1) a use or principal structure in a district restricted against such use or principal structure, (2) an expansion of a nonconforming use, (3) deviation from a specification or standard pursuant to section 54 of P.L.1975, c.291 (C.40:55D-67) pertaining solely to a conditional use, (4) an increase in the permitted floor area ratio as defined in section 3.1 of P.L.1975, c.291 (C.40:55D-4), (5) an increase in the permitted density as defined in section 3.1 of P.L.1975, c.291 (C.40:55D-4), except as applied to the required lot area for a lot or lots for detached one or two dwelling unit buildings, which lot or lots are either an isolated undersized lot or lots resulting from a minor subdivision or (6) a height of a principal structure which exceeds by 10 feet or 10% the maximum height permitted in the district for a principal structure. A variance under this subsection shall be granted only by affirmative vote of at least five members, in the case of a municipal board, or two-thirds of the full authorized membership, in the case of a regional board, pursuant to article 10 . . . of this act.

The MLUL authorizes a planning board "to grant use variances on the affirmative vote of five members." Medici v. BPR, 107 N.J. 1, 19 (1987) (citing N.J.S.A. 40:55D-70(d)). Use variances must be evaluated in the context of the municipality's masterplan and zoning ordinances to ensure that an application

15

for a variance and the planning board's findings do "not substantially impair the intent and purpose of the zone plan and zoning ordinance." Id. at 4.

Plaintiff contends the Planning Board's decision to grant the (c)(2) setback variances, the (d)(5), and (d)(6) variances for height and density deviations, and to approve One Ocean Terrace's site plan application, was arbitrary and capricious. Further, plaintiff avers the judge erred in his application of the standards applicable to (c) and (d) variances and in affirming the Planning Board's decision.

In challenging the Planning Board's decision, plaintiff bears the burden of proof to "show that the [Planning] Board engaged in 'willful and unreasoning action, without consideration and in disregard of the circumstances.'" Northgate Condo Ass'n v. Borough of Hillsdale Plan. Bd., 214 N.J. 120, 145 (2013) (quoting Worthington v. Fauver, 88 N.J. 183, 204-05 (1982)) (internal quotation marks omitted). Here, plaintiff did not meet his burden. Plaintiff failed to demonstrate that the Planning Board disregarded certain circumstances or ignored evidence that the project would be a "substantial detriment to the public good" or would negatively impact the surrounding neighborhood." Plaintiff also failed to show that the project would "substantially impair the intent and purpose of the zone plan and zoning ordinance." We are satisfied that the Planning

16                                                                    A-2859-23

Board's decision to approve One Ocean Terrace's application with these variances was not arbitrary, capricious or unreasonable and is amply supported by the record.

1. The (c) Variances.

N.J.S.A. 40:55D-70(c)(2) "contemplates that even absent proof of 'hardship' pursuant to subsection (c)(1), a bulk or dimensional variance that advances the purposes of the MLUL can be granted if the benefits of the deviation outweigh any detriment." Lang v. Zoning Bd. of Adjustment, 160 N.J. 41, 57 (1999). Under subsection (c)(2), an applicant "must satisfy the familiar negative criteria," namely, that "such variance . . . can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." Ibid. (citing N.J.S.A. 40:55D-70(d)). Plaintiff contends neither the positive criteria were supported by competent evidence and the negative criteria were not established. Again, we disagree.

One Ocean Terrace sought two variances from setback requirements, which implicated "concerns such as preservation of light, air, and open space . . . ." Ten Stary Dom P'ship, 216 N.J. at 32. The Planning Board considered

17

the unrebutted testimony of the "sole experts" who testified at the hearing: Wilder, an engineer and planner, and Hanrahan, an architect.

Wilder explained how several of the Borough's planning goals are advanced by the granting of these variances: (1) Goal G, "to provide sufficient space in appropriate locations for a variety of uses, including residential"; and (2) Goal I, "to promote a desirable, visual environment through good civic design and arrangement." While noting that parking lots "serve a purpose," Wilder testified "[t]hey leave a lot to be desired from an architectural or aesthetic standpoint." In reviewing the Planning Board's determination, the judge found adequate basis in the record for the Planning Board's decision to grant these variances under subsection (c)(2).

Plaintiff further argues that One Ocean Terrace failed to show how the decreased "[five]-foot setbacks promote public health, safety and welfare in a way that [ten]-foot setbacks do not." Plaintiff, and not One Ocean Terrace, however, has the burden of proof to establish the Planning Board's decision as arbitrary, capricious, and unreasonable. Plaintiff's unsupported claims fail to satisfy this standard. See Bressman v. Gash, 131 N.J. 517, 530 (1993) (holding that the record does not have to compel the grant of a variance for the Planning Board to grant a variation within their discretion).

As the judge noted, "both Wilder and Hanrahan testified that neighboring properties would not be affected" by the project. Instead, they "would benefit from improved aesthetics with the removal of the parking lot, as well as space for air and light and added landscaping." The project incorporated goals of both the MLUL and the Borough's Vision Plan, "including branding and aesthetic concerns given the location at the entrance to the town." Specifically, the unrebutted expert testimony demonstrated that One Ocean Terrace's development project advances the Borough's statutory zoning purposes and benefits the community by "revitaliz[ing]" underutilized properties and rebranding the Borough, in accord with the Borough's 2009 Vision Plan.

Wilder testified he saw "no detriment associated with these setback variances." He explained that the setback would be in line with other properties on the street, and One Ocean Terrace has incorporated landscaping to soften the aesthetic of the Property. As the judge noted, the neighboring properties would not be negatively affected; rather, "in actuality, [they] would benefit from improved aesthetics with the removal of the parking lot, as well as space for air and light and added landscaping."

Thus, we are satisfied that the substantial and uncontroverted evidence in the record supports the trial judge's conclusion that (c) variances for the

A-2859-23

proposed project could be granted without substantial detriment to the public good and without impairing the intent and purpose of the zone plan and zoning ordinance.

2. The (d) Variances for Density and Height.

One Ocean Terrace's application sought two use variances for deviations for density and height. Plaintiff contends the record fails to support the density variance and the record is void of "hardship evidence" to support the height evidence. These arguments are unpersuasive.

The MLUL defines density as "the permitted number of dwelling units per gross area of land that is the subject of an application for development, including noncontiguous land, if authorized by municipal ordinance or by a planned development." N.J.S.A. 40:55D-4; Grubbs v. Slothower, 389 N.J. Super. 377, 384 (App. Div. 2007). "Density restrictions . . . serve to limit the intensity of the use of the land to be developed." Id. at 389.

An applicant seeking relief under subsection (d)(5) must demonstrate "special reasons" justifying the relief sought. N.J.S.A. 40:55D-70(d). "Generally, there are sufficient 'special reasons' for the grant of a [(d)] variance under two broad circumstances:

> (1) when the refusal to allow the project would impose
> on the applicant an undue hardship[] and/or

(2) when a proposed project carries out a purpose of zoning as defined in N.J.S.A. 40:55D-2."

[Cox et al., § 32-1, at 469.]

In other words, the "special reasons" derive from the general purposes of the zoning laws and can be established under three circumstances: (1) the proposed use inherently serves the public good; (2) the property owner would suffer an undue hardship if required to use the property in conformance with the permitted uses; and (3) the proposed use would serve the general welfare because the property at issue is particularly suited for the proposed use. Kinderkamack Rd. Assoc., LLC v. Mayor & Council of Oradell, 421 N.J. Super. 8, 13 (App. Div. 2011). N.J.S.A. 40:55D-70 requires an examination of the negative criteria, which includes a showing "that the increase in density would not have a more detrimental [e]ffect on the neighborhood than construction of the project in a manner consistent with the zone's restrictions." Grubbs, 389 N.J. Super. at 390.

Thus, density variances "are subject generally to the same weighing analysis that applies to other (d) variances." Price, 214 N.J. at 389. "[I]n considering such applications, zoning boards of adjustment should focus their attention on whether the applicant's proofs demonstrate 'that the site will

accommodate the problems associated with a proposed use with [a greater density] than permitted by the ordinance."' Grubbs, 389 N.J. Super. at 389 (alteration in original) (quoting Randolph Town Ctr. Assocs., L.P. v. Twp. of Randolph, 324 N.J. Super. 412, 417 (App. Div. 1999)).

> A successful applicant for a density variance therefore must show that despite the proposed increase in density above the zone's restrictions, and, thus, the increased intensity in the use of the site, the project nonetheless served one or more of the purposes of zoning and was consistent with the overall goals of the MLUL.
>
> [Ibid.]

Plaintiff argues that the Planning Board made no findings as to the negative criteria and failed to address the problem relating to traffic. Plaintiff did not raise any arguments before the Planning Board that an increase in density would negatively impact parking or traffic. Nonetheless, the record clearly demonstrates that the experts testified to the minimal impact on traffic and parking from the increased density. Wilder testified to the minimal impact on parking, as the plan accounted for only a one space net loss to public parking. In terms of the impact on traffic, Wilder testified that gates would not be implemented on the Property because "[t]he last thing we want to do is stop traffic [on Ocean Terrace]." The judge correctly found that "[t]here was also sufficient evidence before the [Planning] Board for it to conclude the area could

accommodate the increased density" because it would have a minimal impact on parking and traffic.

In terms of a height variance, the MLUL provides, in pertinent part, that a Planning Board may:

> [i]n particular cases for special reasons, grant a variance to allow departure from regulations pursuant to article [eight] of this act to permit ... a height of a principal structure which exceeds by [ten] feet or [ten percent] the maximum height permitted in the district for a principal structure.
>
> [N.J.S.A. 40:55D-70(d)(6).]

An applicant seeking a height variance must establish that: (1) the applicant can show special reasons for the increased height, and (2) the increased height will not cause "substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." Grasso v. Borough of Spring Lake Heights, 375 N.J. Super. 41, 48-49 (App. Div. 2004). A planning board should "consider the effect of the proposed height variance on the surrounding municipalities affected by the decision." Jacoby v. Zoning Bd. of Adjustment of Englewood Cliffs, 442 N.J. Super. 450, 466 (2015).

Plaintiff argues that the height variance should be vacated because One Ocean Terrace provided no hardship evidence. Plaintiff argues further that the

expert "presented no opinion evidence regarding the alleviation of traffic congestion," and the height variance is being sought solely to serve the "selfish interest in having superior views . . . ."

Here, One Ocean Terrace wanted to build in excess of the permissible height. Specifically, forty-one feet is the permitted height, and One Ocean Terrace sought a variance to extend the height of the building to 48.83 feet—an increase of 7.83 feet. The trial judge found the "area unique in that it is near the boardwalk which is elevated and where adjacent structures to the boardwalk are elevated." Thus, the judge noted "all things are relative," and the increased height "was part of the design calcul[]us ensuring corridors with enough open space to allow for views, light and air through the corridors crossing the property and benefiting the western properties." The Planning Board, as the judge concluded, found the request more in harmony with the aesthetics of this area and not a detriment to the surrounding properties. We discern no error in the judge's analysis.

Plaintiff argues that One Ocean Terrace could build a fully conforming project, equally beneficial to the community, without the need for any of the proposed deviations. However, such an argument does not preclude the Planning Board from approving a project consistent with the Borough's Vision

Plan and zoning purposes that will promote the general welfare, N.J.S.A. 40:55D-2(a), provide adequate light, air and open space, N.J.S.A. 40:55D-2(c), and a desirable visual environment, N.J.S.A. 40:55D-2(i). Bressman, 131 N.J. at 530.

We affirm the trial court's dismissal of plaintiff's action challenging the Planning Board's grant of site plan approval with the requested variances. Plaintiff's remaining arguments, to the extent we have not addressed them, lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

25

A-2859-23